(No. 75420.

THE PEOPLE OF THE STATE OF ILLINOIS, Appel-
lee, v. JERRY MAHAFFEY, Appellant.

*Opinion filed March 30, 1995.—Rehearing denied May 30, 1995.*

448

450

Gary Prichard, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Judy L. DeAngelis and Sally L. Dilgart, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Jerry Mahaffey, petitioned the circuit court of Cook County for post-conviction relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1991, ch. 38, par. 122—1 *et seq.*). The trial court dismissed defendant's amended petition without an evidentiary hearing. Defendant appeals to this court (134 Ill. 2d R. 651). We affirm.

## BACKGROUND

In defendant's direct appeal, the court detailed the circumstances of the crimes committed. (See *People v. Mahaffey* (1989), 128 Ill. 2d 388.) We need not repeat them here. Defendant and his brother, Reginald Mahaffey, were tried jointly before the same jury. Defendant was convicted of the murders of Dean and Jo Ellen Pueschel, the attempted murder and aggravated battery of their son, Richard, and home invasion, rape, armed robbery, residential burglary, and theft. The trial court imposed the following consecutive sentences: death on

the murder convictions; extended prison terms of 60 years each on the attempted murder, rape, and armed robbery convictions; and an extended prison term of 30 years on the residential burglary conviction. The defendant's convictions and sentences were affirmed on direct appeal (*People v. Mahaffey* (1989), 128 Ill. 2d 388) and the United States Supreme Court denied *certiorari* (*Mahaffey v. Illinois* (1990), 497 U.S. 1031, 111 L. Ed. 2d 799, 110 S. Ct. 3291).

On September 14, 1992, defendant filed his 21-count amended petition for post-conviction relief. On March 16, 1993, the trial court granted the State's motion to dismiss the petition without an evidentiary hearing. We will discuss additional relevant facts in the context of the issues raised on appeal.

## DISCUSSION

A proceeding brought under the Post-Conviction Hearing Act (Act) is not an appeal; rather, it is a collateral attack on a judgment of conviction. The purpose of the proceeding is to resolve allegations that constitutional violations occurred at trial, when those allegations have not been, and could not have been, adjudicated previously. The petitioner bears the burden to establish a substantial constitutional deprivation. *People v. Albanese* (1988), 125 Ill. 2d 100, 104-05; *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

The petitioner in a post-conviction proceeding is not entitled to an evidentiary hearing as of right; rather, the Act permits summary dismissal of a nonmeritorious petition. The allegations in the petition, supported where appropriate by the trial record or accompanying affidavits, must show a substantial violation of constitutional rights. Determinations of the reviewing court on the prior direct appeal are *res judicata* as to issues actually decided; issues that could have been presented on direct appeal, but were not, are deemed waived. Deter-

minations of the trial court in a post-conviction proceeding will not be disturbed unless manifestly erroneous. *Albanese*, 125 Ill. 2d at 105, 109; *Silagy*, 116 Ill. 2d at 365, 373.

On appeal, defendant contends that he was denied his constitutional rights because: (1) the State received twice as many peremptory challenges as he; (2) his trial counsel labored under a conflict of interest; (3) he received deficient representation at a pretrial suppression hearing, the death sentencing hearing, and on direct review; (4) this court, on direct review, held that the rule announced in *People v. Gacho* (1988), 122 Ill. 2d 221, 262, applied prospectively; and (5) the jury instructions failed to adequately guide the jury in deciding whether to impose the death penalty.

## I. Number of Peremptory Challenges

Defendant first contends that section 115—4(e) of the Code of Criminal Procedure of 1963 violates due process. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.) Section 115—4(e) provides, *inter alia*: that "[I]n a single trial of more than one defendant, each defendant shall be allowed 12 peremptory challenges in a capital case ***. The State shall be allowed the same number of peremptory challenges as all of the defendants." (Ill. Rev. Stat. 1991, ch. 38, par. 115—4(e).) Consequently, defendant, who was tried jointly with Reginald, received 12 peremptory challenges, while the State received 24. Defendant argues that the State's receipt of twice as many peremptory challenges as he denied him the due process of law. We note—and reject—the State's waiver argument. See *People v. Sarelli* (1973), 55 Ill. 2d 169.

Defendant's claim lacks merit. It is quite settled that the peremptory challenge is not of constitutional magnitude. It is a creature of statute and is not required by the Federal Constitution. (*Georgia v. McCollum* (1992), 505 U.S. 42, 57, 120 L. Ed. 2d 33, 50, 112 S.

Ct. 2348, 2358; *Ross v. Oklahoma* (1988), 487 U.S. 81, 88-89, 101 L. Ed. 2d 80, 90, 108 S. Ct. 2273, 2278-79; *Stilson v. United States* (1919), 250 U.S. 583, 586-87, 63 L. Ed. 1154, 1156-57, 40 S. Ct. 28, 30.) Thus, "it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. [Citations.] As such, the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Ross*, 487 U.S. at 89, 101 L. Ed. 2d at 90-91, 108 S. Ct. at 2279.

Seeking support for this claim, defendant misreads two United States Supreme Court decisions. Defendant argues that *Wardius v. Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208, holds that due process "prohibits state trial practice rules which give the prosecution benefits unless reciprocal benefits are given to the defendant." However, the actual holding of *Wardius* is clearly more limited: "We hold that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Wardius*, 412 U.S. at 472, 37 L. Ed. 2d at 86, 93 S. Ct. at 2211.

Defendant also argues that *Holland v. Illinois* (1990), 493 U.S. 474, 107 L. Ed. 2d 905, 110 S. Ct. 803, held that neither the defendant nor the State should be favored regarding peremptory challenges. However, *Holland* actually held that a prosecutor's use of peremptory challenges to eliminate a distinctive group in the community does not deprive the defendant of a sixth amendment right to the fair possibility of a representative jury. *Holland*, 493 U.S. at 477-78, 107 L. Ed. 2d at 914-15, 110 S. Ct. at 806.

It is clear that the right that defendant claims was violated is statutory and not constitutional. The Post-Conviction Hearing Act is limited to substantial viola-

tions of *constitutional* rights. Defendant cannot remedy his failure to raise a constitutional issue with the conclusory allegation that this irregularity deprived him of due process. (*People v. Shaw* (1971), 49 Ill. 2d 309, 311.) In any event, defendant was not denied due process because he received the number of peremptory challenges that section 115—4(e) of the Criminal Code of 1961 provides. We cannot say that the trial court manifestly erred in dismissing this claim.

## II. Conflict of Interest

Defendant next claims that he was deprived of his constitutional right to effective assistance of counsel at trial. (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8.) The record shows that Steven Decker represented defendant, while Decker's law partner, Lawrence Levin, represented codefendant Reginald. We note that the trial judge was not apprised of a possible conflict of interest. Defendant contends that the professional relationship between Decker and Levin caused Decker to labor under a conflict of interest.

Decker argued that neither defendant nor codefendant Reginald committed the crimes. Defendant points out that Decker failed to argue that Reginald and another brother, Cedric, actually committed the crimes. Defendant posits that Decker failed to raise this defense because he did not want to conflict with his law partner's representation of Reginald.

The State initially responds that defendant waived this issue because his appellate counsel could have raised it on direct appeal. We disagree. The same assistant public defender represented both defendant and Reginald on direct appeal. (See *Mahaffey*, 128 Ill. 2d at 393.) It would be fundamentally unfair to require appellate counsel essentially to accuse one client, Reginald, so as to raise the conflict of interest issue in favor of the other client, the defendant. (See *People v. Burns* (1979),

75 Ill. 2d 282, 290.) We hold that this issue is not waived and now address the merits.

The sixth and fourteenth amendments to the United States Constitution guarantee the right to effective assistance of counsel. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 343, 64 L. Ed. 2d 333, 343, 100 S. Ct. 1708, 1715; *People v. Vriner* (1978), 74 Ill. 2d 329, 337.) Effective assistance of counsel means assistance that entitles an accused to the undivided loyalty of his or her counsel free from conflicting interests or inconsistent obligations. *People v. Spreitzer* (1988), 123 Ill. 2d 1, 13-14; *People v. Stoval* (1968), 40 Ill. 2d 109, 111-12.

However, the joint representation of criminal defendants by a single attorney does not, by itself, violate this right because it is always *possible* that the interests of codefendants may diverge. Thus, to prevail on a claim of ineffective assistance of counsel based on joint representation of criminal codefendants by a single attorney, where the trial court was not apprised of a potential conflict, a defendant must show an *actual* conflict of interest manifested at trial. (*Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346-47, 100 S. Ct. at 1718; *Vriner*, 74 Ill. 2d at 340-41.) In other words, to obtain reversal of the conviction, the defendant must point to some specific defect in defense counsel's strategy, tactics, or decision-making attributable to the conflict. (*Spreitzer*, 123 Ill. 2d at 18.) For purposes of conflict of interest analysis, the law considers the representation of codefendants by law partners or associates the same as the representation of codefendants by one attorney. *Ross v. Heyne* (7th Cir. 1980), 638 F.2d 979, 982-83; *People v. Dace* (1987), 153 Ill. App. 3d 891, 896; accord *Austin v. State* (1992), 327 Md. 375, 382-86, 609 A.2d 728, 731-33 (collecting authorities).

In the present case, defendant points to the failure of Decker, his trial counsel, to argue that codefendant

Reginald and their brother, Cedric, actually committed the crimes. Defendant attributes this failure to a conflict of interest between Decker and Levin, who was Reginald's trial counsel and Decker's law partner.

We cannot accept this claim. Both defendant and Reginald denied their guilt. This strategy alone does not reveal a conflict. Further, the mere availability of a strategy that would have helped one criminal codefendant at the expense of another does not create hostility between their interests. (*People v. Echols* (1978), 74 Ill. 2d 319, 327-28.) Defendant merely attempts to create a conflict of interest through conjecture as to what strategy might have been pursued. This court will not overturn a conviction based on hypothetical conflicts. (*People v. Berland* (1978), 74 Ill. 2d 286, 301.) We cannot say that the trial court manifestly erred in dismissing this claim.

### III. Deficient Representation

Defendant claims he was denied effective assistance of counsel based also on deficient representation. Defendant contends that his trial counsel failed to investigate and introduce evidence at (A) a pretrial suppression hearing, and (B) the death sentencing hearing; defendant also claims (C) that his trial and appellate counsel failed to preserve for direct review his claim that he was denied his constitutional right to an individualized death sentencing hearing.

To establish a claim of ineffective assistance of counsel based on deficient representation, a defendant must satisfy the familiar *Strickland* test. (See *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The test is composed of two prongs: deficiency and prejudice. First, the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth

amendment. A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or lack of action might be the product of sound strategy. *People v. Hampton* (1992), 149 Ill. 2d 71, 108; *People v. Caballero* (1989), 126 Ill. 2d 248, 259-60.

Second, the defendant must demonstrate prejudice. The defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Hampton*, 149 Ill. 2d at 108; *Caballero*, 126 Ill. 2d at 260.) The prejudice prong of *Strickland* entails more than an "outcome-determinative" test. The defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. (*Lockhart v. Fretwell* (1993), 506 U.S. 364, 369-72, 122 L. Ed. 2d 180, 189-91, 113 S. Ct. 838, 842-44.) A court uses the *Strickland* analysis also to test the adequacy of appellate counsel. *Caballero*, 126 Ill. 2d at 269-70.

A defendant must satisfy both prongs of the *Strickland* test. However, if the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 511-12.

In each of the three areas in which defendant claims ineffective assistance, the State initially responds that the issue is waived in this post-conviction proceeding. We disagree. The trial record does not include the evidence which defendant now presents to substantiate his claims of ineffectiveness. Further, regarding defendant's claim of ineffectiveness on direct review, it would be fundamentally unfair to expect appellate counsel to

raise and argue convincingly his own incompetence. Because the record does not contain the evidence which underlies his claims, and in view of fundamental fairness, we now address the merits of this issue. See *Eddmonds*, 143 Ill. 2d at 528; *People v. Gaines* (1984), 105 Ill. 2d 79, 91.

A. *Failure to Investigate: Pretrial Suppression Hearing*

Defendant contends that he did not receive effective assistance of counsel at a pretrial suppression hearing. Defendant alleges that trial counsel failed to investigate and introduce evidence: (1) that defendant is, in the words of his post-conviction counsel, mentally retarded and, consequently, incapable of understanding his *Miranda* warnings (see *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602); (2) from a neighbor who heard police officers beat defendant during his arrest; and (3) that Chicago police officers stationed at Area 2 headquarters had a pattern and practice of using brutality in extracting inculpatory statements.

Prior to trial, trial counsel moved to suppress defendant's inculpatory statement. At the hearing on the motion, defendant and his wife, Carol Mahaffey, testified in favor of the motion. Their testimony was essentially as follows. On September 2, 1983, at approximately 5:40 a.m., defendant, his wife, and their two daughters were asleep in their apartment. A knock at the door awakened them. Carol opened the door, and Chicago police officers pushed their way into the apartment with their pistols drawn. Carol and the children were soon thereafter taken downstairs.

During his arrest, police punched defendant in the face, causing his nose to bleed; threw him against a wall and put a gun to his head; kicked him in the groin, causing him to collapse and curl up in a ball; and, while he was incapacitated, kicked him twice in the ribs. The officers then tightened a plastic garbage bag over defen-

dant's head until he could not breathe. Defendant's pajamas were bloodied during the beating, so they were removed. Wearing different clothes, defendant was handcuffed and taken to Chicago police department Area 2 headquarters. In a squad car en route to Area 2, police threatened defendant with death.

At the station, defendant was threatened with death if he did not tell the officers what they wanted to know. No one informed defendant of his constitutional rights. After speaking with an assistant State's Attorney, at 1 p.m., defendant gave an inculpatory statement. It was subsequently typed; an assistant State's Attorney read only the first page of the statement to defendant. Having attained only the eighth grade, defendant signed the statement without reading it.

The State's case, consisting mostly of the testimony of Chicago police officers and assistant State's Attorneys, was essentially as follows. Detectives Boffo, Grunhard, and Gutrich, Sergeant Byrne, and Officer Lotito arrested defendant. Defendant was given *Miranda* warnings. They did not beat, kick, or otherwise abuse defendant. They allowed him to change his clothes prior to taking him to Area 2 headquarters.

Detective Kajari interviewed defendant at Area 2 headquarters. He initially gave defendant *Miranda* warnings. After reading each warning, Detective Kajari asked defendant whether he understood that warning. Defendant responded that he did. Defendant subsequently admitted his involvement in the crimes.

Assistant State's Attorneys Irving Miller and George Velcich subsequently interviewed defendant, after giving him *Miranda* warnings, and took an inculpatory statement from him. The statement began with defendant again being given *Miranda* warnings. After each warning, defendant again stated that he understood each. After the typed statement was shown to him, de-

fendant stated that he could read English, but asked that the statement be read to him. Defendant initialled every page of the statement and signed it at the end.

A photograph of defendant taken on that day did not reveal any facial bruises, scars, or other signs of abuse. The next day, defendant was taken to Cermak Health Service. Emergency medical technician Muralles did not observe any signs of recent physical abuse.

At the close of the suppression hearing, the trial court denied defendant's motion to suppress his inculpatory statement. After reviewing the evidence, the court found "that the great weight of the evidence" showed that defendant was not abused at the time of his arrest or questioning leading up to his statement. Further, the court found that "there is no substantial evidence to support the claims of brutality and there is overwhelming evidence to refute them." The court also found by "overwhelming" evidence that defendant was given *Miranda* warnings, which he understood, at each and every appropriate occasion, and that no one coerced defendant. The trial court concluded that defendant gave his statement knowingly, freely, and voluntarily.

Now, in this post-conviction proceeding, defendant contends that trial counsel was constitutionally deficient in failing to investigate and introduce evidence that defendant is mentally challenged, that he was beaten during his arrest, and that police officers at Area 2 headquarters had a pattern of using brutality in extracting inculpatory statements. Defendant submits that there is a reasonable probability that the trial court would have granted the motion to suppress had trial counsel introduced this evidence.

We disagree. We conclude that defendant fails the prejudice prong of the *Strickland* test. Thus, we need not address whether trial counsel was deficient under the first prong. See *Eddmonds*, 143 Ill. 2d at 511-12.

The first alleged deficiency relates to defendant's mental capacity to understand his *Miranda* warnings. Defendant relies on an affidavit by a clinical psychologist, who examined defendant. The psychologist opined that defendant has very low intelligence, a full scale IQ of 67, and a "borderline personality disorder." He further opined that it was "highly probable that [defendant] could not understand his *Miranda* rights when they were presented."

The introduction of this evidence at the suppression hearing would not have created a reasonable probability that the trial court would have granted defendant's motion to suppress. In determining whether a defendant knowingly and intelligently waived his or her *Miranda* rights, a court considers the totality of the circumstances, including the characteristics of the defendant and the details of the interrogation, without any one factor or circumstance controlling. (*People v. Reid* (1990), 136 Ill. 2d 27, 54-55.) Evidence of a defendant's limited intellectual capacity, by itself, does not indicate that a defendant is incapable of waiving his or her constitutional rights and making an inculpatory statement. That is only one factor to be considered in the totality of the circumstances under which the statement was made. *People v. Murphy* (1978), 72 Ill. 2d 421, 437.

Intelligent knowledge in the context of *Miranda*:

"need not mean the ability to understand far-reaching legal and strategic effects of waiving one's rights, or to appreciate how widely or deeply an interrogation may probe, or to withstand the influence of stress or fancy; but to waive rights intelligently and knowingly, one must at least understand basically what those rights encompass and minimally what their waiver will entail." (*People v. Bernasco* (1990), 138 Ill. 2d 349, 363.)

Thus, where the record shows that a defendant's subpar intellectual capacity does not interfere with his or her ability to comprehend the meaning of *Miranda* warn-

ings, the defendant's inculpatory statements will not be suppressed. See *People v. Leiker* (1983), 115 Ill. App. 3d 752, 757.

In the present case, the trial court reviewed the totality of the circumstances under which defendant made his inculpatory statement. In addition to the trial court's findings, we note that defendant has had many prior contacts with the criminal justice system, including six prior convictions. These prior contacts indicate a familiarity with police procedure, including *Miranda* warnings. Further, the trial judge personally observed defendant during the suppression hearing. Even if trial counsel had presented evidence of defendant's limited intellectual capacity, the trial court need not have accepted the psychologist's conclusions. The trial court was in the best position to evaluate defendant's ability to understand his rights. See *People v. Rogers* (1986), 141 Ill. App. 3d 374, 380-81; *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 131-33; *People v. Ellison* (1984), 126 Ill. App. 3d 985, 991-94.

The trial court found by overwhelming evidence that defendant understood his *Miranda* warnings, which were given at every appropriate occasion. Thus, in terms of the prejudice prong of the *Strickland* test, we conclude that the introduction of this evidence would not have created a reasonable probability that the trial court would have granted defendant's motion to suppress.

The second alleged deficiency relates to defendant's being beaten during his arrest. Defendant relies on an affidavit by a neighbor who lived in the apartment directly above that of defendant. The neighbor, if asked, would have testified as follows. He knew defendant and recognized his voice. On the morning of defendant's arrest, the neighbor was awakened by the sound of fighting coming from defendant's apartment. The neighbor

heard defendant screaming and the voice of a stranger screaming "Get up!"

This evidence corroborates the testimony of defendant and his wife. However, the trial court found by "the great weight of the evidence" that defendant was not brutalized. Consequently, the introduction of the neighbor's testimony would not have created a reasonable probability that the trial court would have granted defendant's motion to suppress.

The third alleged deficiency relates to an alleged pattern and practice of Area 2 police using brutality in extracting inculpatory statements. Defendant offers the affidavit of a worker at a citizen's watchdog group. If asked, she would have testified as follows. During her work with this organization, she reviewed numerous complaints of police brutality at Area 2 between 1982 and 1984. Based on these complaints, she opined that Area 2 police engaged in a pattern and practice of brutality in extracting inculpatory statements. She further opined that defendant's allegations of brutality were consistent with this pattern and practice of brutality at Area 2.

This affidavit is inadequate to show that defendant's inculpatory statement was involuntary. The affiant was privy to allegations of police brutality. However, she does not name any particular person stationed at Area 2. More specifically, she does not name any of the officers who arrested and interrogated defendant. Even if she did, it does not follow that those officers brutalized this defendant in this case. Thus, the affidavit fails to establish, generally, that police brutality exists at Area 2 and, specifically, that defendant was brutalized into giving an inculpatory statement.

In terms of the *Strickland* test, this allegation fails both prongs. Regarding the first prong, trial counsel was not constitutionally deficient for failing to introduce

this evidence because such evidence does not exist; the proffered affidavit is inadequate to show that defendant's inculpatory statement was involuntary. Regarding the second prong, defendant was not prejudiced by trial counsel's failure to introduce this evidence because it would properly have been rejected as irrelevant to his particular case. Thus, there is no reasonable probability that the introduction of this evidence would have resulted in the granting of defendant's motion to suppress. After carefully reviewing the record, we cannot say that the trial court's denial of defendant's motion to suppress was unreliable or unfair.

B. *Failure to Investigate: Death Sentencing Hearing*

Defendant contends that he did not receive effective assistance of counsel at the death sentencing hearing. Defendant alleges that trial counsel failed to investigate and introduce mitigating evidence: (1) from defendant's family and friends; (2) that he is, in his post-conviction counsel's words, mentally retarded and illiterate; (3) that he was extremely disturbed both mentally and emotionally; and (4) that he was extremely passive-dependent and, consequently, was easily led by others into performing acts which were not in his best interest. Defendant alleges that trial counsel failed also: (5) to consult with and prepare the mitigating witnesses who testified at the sentencing hearing; and (6) to inform the jury that if it did not sentence defendant to death, defendant would be sentenced to a prison term of natural life without possibility of parole. Defendant also alleges that trial counsel was constitutionally deficient due to: (7) his incoherent and irrational closing argument; and (8) the cumulative effect of his unreasonable performance.

We note that defendant also assigns error to the post-conviction proceedings. Defendant contends that the post-conviction court erred in: (9) rejecting an affida-

vit purporting to establish the standard of care in the death sentencing hearing; and (10) denying defendant's request to depose trial counsel.

Even assuming that trial counsel was deficient under the first prong of *Strickland*, defendant must still demonstrate prejudice under the second prong. In the context of a death sentencing hearing, a defendant must prove that there is a reasonable probability that, absent counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Hampton*, 149 Ill. 2d at 109; *Eddmonds*, 143 Ill. 2d at 511-12.

We conclude that there is no reasonable probability that, absent trial counsel's allegedly deficient conduct or the post-conviction court's evidentiary rulings, the sentencer would have found that the mitigating circumstances preclude the imposition of the death penalty. Defendant admitted his involvement in these vicious crimes; his detailed inculpatory statement was admitted at trial. Many details of his statement were corroborated by other evidence, including identification by Richard, the son of the murder victims. *Mahaffey*, 128 Ill. 2d at 397-404.

Additionally, the State provided the following aggravating evidence at the death sentencing hearing. Defendant participated in a prison escape while incarcerated pending trial. During the escape, defendant, armed with a gun, took $650 from a prison guard. Defendant escaped, but was captured two days later. Also, defendant had six prior convictions. In 1974, 1976, and 1981, defendant was convicted of robbery. In 1981, defendant was twice convicted for theft and once for retail theft. *Mahaffey*, 128 Ill. 2d at 405.

Defendant's mitigation witnesses were himself, his mother, and his wife. They testified essentially as to how his death would affect their family. Defendant

specifically testified that he was illiterate. Also, defendant was asked whether he would repeat his attempt to escape from prison. Defendant answered, "I don't know."

Some of trial counsel's alleged deficiencies involved his failure to assemble mitigating evidence from defendant's family and friends. This testimony would have gone essentially to defendant's strong family ties and troubled, disadvantaged childhood. Such testimony from these additional witnesses, or additional testimony from the witnesses who did testify, would have been merely cumulative. (See *Jackson v. Roth* (7th Cir. 1994), 24 F.3d 1002, 1005.) Indeed, such testimony is not inherently mitigating; the jury might have considered such testimony to be an aggravating factor. The jury could have regarded defendant's troubled childhood, in combination with his past criminal record, as an indicator of defendant's future dangerousness. See *People v. Henderson* (1990), 142 Ill. 2d 258, 339.

Similarly, several of trial counsel's alleged deficiencies involve his failure to investigate mitigating evidence of defendant's psychological, developmental, and emotional problems. As with proof of defendant's troubled childhood, this type of psychological evidence is likewise not inherently mitigating. Proof of defendant's psychological handicaps not only could have evoked compassion from the jury, but also could have demonstrated defendant's continued dangerousness. See *Henderson*, 142 Ill. 2d at 340.

When a death sentencing jury hears evidence of mental impairment, its reaction has been described as follows:

"How *do* juries react to such information? On the one hand, it shows the defendant to be less culpable; on the other, it shows the defendant to be less deterrable. These cut in different directions. Jurors who see capital punishment as the just desert [*sic*] of the wicked will be swayed

in favor of lenience; jurors with more instrumental views will incline toward execution as the only way to incapacitate such a person." (Emphasis in original.) *Brewer v. Aiken* (7th Cir. 1991), 935 F.2d 850, 861 (Easterbrook, J., concurring).

In the present case, defendant's sentencing jury heard defendant testify that he did not know if he would repeat his attempt to escape from prison. If the jury had heard evidence of defendant's alleged psychological impairments, the jury could have concluded that defendant is dangerous and society must be protected from him.

We will address defendant's sixth deficiency allegation later in this opinion. We conclude that the absence of the remaining alleged deficiencies that pertain to trial counsel, or the alleged evidentiary errors by the post-conviction court, considered separately or as a whole, would not have created a reasonable probability of a different sentence. After carefully reviewing the record, we cannot say that the death sentence imposed on defendant was unreasonable or unfair.

### C. *Failure to Preserve Issue: Individualized Sentencing Hearing*

The trial court denied defendant's motion to sever his death sentencing hearing from that of Reginald. Defendant's trial counsel failed to include this issue in his post-trial motion, thereby waiving the issue on direct review. Also, although defendant's appellate counsel raised the issue on direct review, he did not cite to any authority or to any section of the record in support of this argument. (*Mahaffey*, 128 Ill. 2d at 431.) Defendant contends that his trial and appellate counsel failed to preserve for direct review his claim that he was denied his constitutional right to an individualized sentencing hearing.

Defendant claims that the trial court denied his constitutional right to an individualized sentencing hearing by refusing to sever his death sentencing hearing from that of Reginald. Defendant contends that he had the constitutional right to have separate juries determine whether the death penalty was appropriate for him and Reginald.

We disagree. Generally, defendants who are jointly indicted are to be jointly tried unless a separate trial is necessary to avoid prejudice to one of the defendants. (*People v. Olinger* (1986), 112 Ill. 2d 324, 345.) This is so for several reasons. A joint trial promotes economy, reliability, and consistency in the judicial process. In a joint trial, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From this perspective, the jury may be able to determine more reliably the guilt or innocence of a particular defendant and to assign more fairly the respective responsibilities of each defendant in the sentencing. (*Buchanan v. Kentucky* (1987), 483 U.S. 402, 418, 97 L. Ed. 2d 336, 352, 107 S. Ct. 2906, 2915.) Specifically under our death penalty statute, at the death sentencing hearing, the same jury can consider the entire trial record, allowing a more perceptive and complete analysis of aggravating and mitigating factors, even in cases where the defendant does not present any evidence at the hearing. *People v. Lewis* (1981), 88 Ill. 2d 129, 146-47.

Of course, the eighth amendment requires individualized sentencing determinations in death penalty cases. (*Stringer v. Black* (1992), 503 U.S. 222, 230, 117 L. Ed. 2d 367, 378, 112 S. Ct. 1130, 1136; *People v. Thompkins* (1994), 161 Ill. 2d 148, 166-67.) Consistent with this mandate, our death penalty statute requires the jury to consider and weigh any aggravating and mitigating circumstances before deciding whether to impose the death penalty upon a defendant. The statute allows for suf-

ficient consideration of both the circumstances of the particular offense and the character and record of the particular defendant before the death penalty can be imposed. *People v. Fields* (1990), 135 Ill. 2d 18, 51.

Defendant argues that the joint death sentencing hearing in his case "simply could not allow" for this required individualized treatment. We disagree. The record shows that the joint death sentencing hearing did not preclude the jury from rendering an individualized sentencing decision as to defendant. The aggravating evidence that the State presented at the sentencing hearing was similar and in some respects nearly identical as to defendant and Reginald. Also, defendant's trial counsel presented mitigating evidence relevant specifically to defendant's character and record. See *Fields*, 135 Ill. 2d at 52.

Lastly, the trial court instructed the jury: to consider each defendant separately, that each defendant was entitled to have his case decided on the evidence and law applicable to him, and that any evidence which was limited to one defendant should not be considered as to the other defendant. We presume that the jury followed these instructions. See *Fields*, 135 Ill. 2d at 52-53.

Thus, we conclude that this allegedly deficient performance fails the second prong of the *Strickland* test. If defendant's trial and appellate counsel had preserved this issue for direct review, his sentence would not have been reversed. We cannot say that the trial court manifestly erred in dismissing these ineffective-assistance claims.

IV. Prospective Application of *Gacho*

On direct review, defendant claimed that he was denied due process and his right not to be arbitrarily and capriciously sentenced to death. (U.S. Const., amends. VIII, XIV; Ill. Const. 1970, art. I, § 2.) Defendant contended that these constitutional violations

resulted from the trial judge's failure to instruct the jury of the mandatory alternative sentence of natural life imprisonment. This court held that the rule requiring the instruction (see *People v. Gacho* (1988), 122 Ill. 2d 221, 262) was prospective only. Therefore, the trial court properly instructed the jury based on existing law. 128 Ill. 2d at 430-31; accord *People v. Steidl* (1991), 142 Ill. 2d 204, 244-45; *Fields*, 135 Ill. 2d at 65-66.

In his post-conviction petition, defendant now contends that this court's disposition of this issue on direct review violated his eighth and fourteenth amendment rights. However, our holding on direct review is *res judicata*; the issue cannot be relitigated by recharacterizing it. (*People v. Spreitzer* (1991), 143 Ill. 2d 210, 223-24.) We cannot say that the trial court manifestly erred in dismissing this claim.

### V. Adequacy of Sentencing Instructions

Defendant lastly claims that the jury instructions given at the sentencing hearing violated his constitutional rights. (U.S. Const., amends. VIII, XIV; Ill. Const. 1970, art. I, § 2.) He contends that the jury instructions failed to adequately guide the jury in deciding whether to impose the death penalty. Defendant bases his claim on *United States ex rel. Free v. Peters* (N.D. Ill. 1992), 806 F. Supp. 705.

However, that decision has been reversed and its reasoning rejected. (*Free v. Peters* (7th Cir. 1993), 12 F.3d 700; accord *Gacy v. Welborn* (7th Cir. 1993), 994 F.2d 305.) We continue to agree with this conclusion. (*Thompkins*, 161 Ill. 2d at 197-98; *People v. Kokoraleis* (1994), 159 Ill. 2d 325, 332-34.) We cannot say that the trial court manifestly erred in dismissing this claim.

Finally, we note that the last nine counts of defendant's 21-count amended petition are claims that this court addressed on direct review. These claims cannot be reargued here. (*Albanese*, 125 Ill. 2d at 105.) We

decline defendant's request to reconsider our disposition of those claims.

## CONCLUSION

For the foregoing reasons, the order of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Wednesday, September 20, 1995, as the date on which the sentence of death entered in the circuit court is to be imposed. The defendant shall be executed in the manner provided by law. (Ill. Rev. Stat. 1991, ch. 38, par. 119—5.) The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Stateville Correctional Center, and the warden of the institution where defendant is now confined.

*Affirmed.*