**Clarence THOMAS, Petitioner–Appellant,**

**v.**

**Larry SIMS, Respondent–Appellee.**

**No. 02–2494.**

United States Court of Appeals, Seventh Circuit.

Argued Aug. 6, 2003.

Decided Aug. 25, 2003.

Neil A. Bregman Mayer, Brown, Rowe & Maw, New York, NY, for Petitioner–Appellant.

Domenica A. Osterberger, Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before BAUER, POSNER, and KANNE, Circuit Judges.

## ORDER

Clarence Thomas and co-defendant Anthony DuBose were convicted of aggravated robbery and aggravated battery following a bench trial at which they were represented by the same attorney. After unsuccessfully exhausting his state court remedies, Thomas petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging, among other things, that his trial counsel's joint representation of him and his co-defendant deprived him of effective assistance of counsel. The district court denied Thomas's petition, concluding that the Illinois appellate court reasonably applied *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in denying Thomas's ineffective-assistance claim. We affirm for the reasons set forth below.

## Background

We presume the facts underlying Thomas's conviction are stated correctly in the record of the state court proceedings. The Illinois appellate court recited those facts as follows:

Defendant's conviction arose from the robbery and beating of the victim, Jeffrey Bullard, at 12:30 a.m. on March 5, 1996, near 4209 West Carroll Avenue in Chicago. Bullard testified that on the night in question, he and Marianna Bullard drove to that area to purchase heroin. Bullard parked his car and gave Mariana $30 to buy the drugs. She got out and walked toward a gangway with the money in her hand. At this time, another car drove up and parked in front of Bullard's car. Defendant and DuBose got out of the car and walked in the same direction as Marianna. Several seconds later, Bullard heard Marianna screaming, then saw her walking toward his car screaming and swearing at defendant and DuBose. He also testified that she threw her money over a fence. Bullard got out of his car, walked toward the group and asked, "What the hell is going on," after which DuBose pulled out a gun, backed Bullard up against his car, and stated, "Give it up, give it up." After Bullard replied that he did not have any money, DuBose hit him on the head with the gun, cutting him over his left eye. When Bullard fell down, defendant and DuBose beat him, and defendant took his wallet. After they got the wallet, defendant and DuBose got in their car and sped away. Police then arrived and Bullard told the officers what happened and described the men and their car. The officers stopped the car two blocks away and arrested defendant and DuBose, who were then identified by Bullard and Marianna.

Chicago Police Officer Rodrick Robinson testified that while he was on patrol on the night in question, he saw Bullard and Marianna flagging down an unmarked car that was driving in front of him. He then saw a blue station wagon speeding away and he followed it. While following the station wagon, Robinson learned that the car was used in a robbery. Several seconds later, the car crashed and Robinson questioned the occupants about the robbery. Robinson and his partner made the occupants, one woman and two men, later identified as defendant and DuBose, get out of the car. At this time, Bullard and Marianna were brought to the scene and identified defendant and DuBose. Robinson searched them and found Bullard's wal-

let on DuBose's person and $30 on defendant's person. Robinson's partner then searched the car and found a toy gun wrapped in black tape. Bullard identified the gun as the one DuBose used to hit him. Robinson then gave defendant and DuBose *Miranda* warnings and took them to the police station. Officer Leslie Smulevitz testified that she interviewed both defendant and DuBose that morning at the police station. After giving DuBose *Miranda* warnings, he gave a statement in which he said that he, defendant and a woman went to get heroin at a "heroin spot" earlier that evening. When they arrived, they saw Bullard and Marianna, and defendant announced that he was going to rob Marianna. When defendant began walking toward Marianna, Bullard got out of his car. DuBose then pulled the toy gun from his pocket, confronted Bullard, knocking him down and taking his wallet. DuBose then stated that he, defendant, and the woman drove away and were later arrested. Defense counsel objected to the use of this statement against defendant, and the circuit court sustained the objection, ruling that the statement was admissible against only DuBose.

According to Smulevitz, defendant made a statement indicating it was DuBose who wanted to rob Bullard and Marianna. Defendant then asked DuBose if he would need a weapon and he said "no" because he already had the toy gun. DuBose then got out of the car, told Marianna to give him her money, took the money and when Bullard got out of his car and confronted them, they fought with him. DuBose began going through Bullard's pockets, and defendant told DuBose to "Leave it alone," but DuBose took the wallet. Again, counsel objected to the use of the statement against DuBose, the circuit court sustained the objection for the same reason it sustained the earlier objection.

The trial court found Thomas and DuBose guilty of one count of aggravated robbery and one count of aggravated battery for beating Bullard and stealing his wallet. Both men were sentenced to fifteen years' imprisonment for the robbery and five years for the battery to be served concurrently. On direct appeal, Thomas argued that he was denied effective assistance of counsel due to a conflict of interest arising from his trial counsel's dual representation. He contended that most of the evidence pointed to DuBose and not him, and that conflict-free counsel could have put on a plausible individual defense based on Thomas's post-arrest statement that he did not play an active role in the robbery or assault. He further suggested that because of the conflict counsel failed to explore issues of accountability or the possibility that Thomas was too intoxicated to form criminal intent.

The Illinois appellate court affirmed Thomas's convictions, concluding that he failed to demonstrate the existence of an "actual conflict of interest manifested at trial." In so concluding, the court rejected Thomas's contention that he could have testified and denied actively participating in the robbery because any such testimony would have been called into question by Thomas's post-arrest admission that he asked DuBose whether he needed a gun. The court also rejected Thomas's assertion that defense counsel could have explored other potential defenses, such as voluntary intoxication, as "based on nothing more than speculation." In addition, the court noted that when confronted with a potential conflict arising from the use of the defendants' post-arrest statements against one another at trial, defense counsel objected and the trial court sustained the objections.

Thomas renewed his ineffective assistance claim based on the alleged conflict in his petition for leave to appeal to the Illinois supreme court, but the court denied the petition in October 1998. Meanwhile, Thomas petitioned for state post-conviction relief raising a number of other ineffective assistance of counsel theories. The trial court summarily denied his petition, the Illinois appellate court affirmed, and the Illinois supreme court denied leave to appeal in October 1999.

Five months later, in March 2000, Thomas filed this timely pro se petition for habeas corpus relief raising five grounds, but only his ineffective-assistance claim based on counsel's joint representation is at issue here. The district court denied that claim on its merits, reasoning that the Illinois appellate court's decision reflected "ample consideration and appropriate application of the *Strickland* standard" and concurring with the appellate court's conclusion that Thomas had "not met his burden to demonstrate that he was denied effective assistance of counsel." We granted Thomas's request for a certificate of appealability and appointed counsel to represent him. Shortly thereafter, Thomas's appointed counsel, noticing that state court record was devoid of the transcript from Thomas's trial, moved the district court to supplement the record on appeal with the trial transcript. The district court, however, denied the motion, and this appeal followed.

## Analysis

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that where, as here, a state court adjudicates a prisoner's constitutional claim on the merits, a federal court may grant habeas corpus relief only if the state court's decision was contrary to or involved an unreasonable application of clearly estab-lished federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). On appeal, Thomas first argues that the district court premised its conclusion that the state appellate court's decision in this case was neither contrary to or an unreasonable application of Supreme Court law on the wrong Supreme Court precedent. Specifically, Thomas argues that the typical two-pronged analysis set forth by the Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), does not apply in cases like this one, where the alleged ineffective assistance is based on a conflict of interest caused by counsel's dual representation that was not raised during trial. Rather, he maintains that the proper standard to be employed in such a case is the more lenient one articulated by the Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). We agree.

Under *Strickland*, a defendant alleging ineffective assistance must demonstrate both that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by this deficient representation. 466 U.S. at 687. Prejudice requires a showing that absent the attorney's deficient performance there is a reasonable likelihood that the outcome of the proceedings would have been different. *Id.* at 694. Where the ineffective-assistance claim is based on a conflict of interest arising from counsel's joint representation, however, a defendant need not satisfy *Strickland*'s prejudice prong. *See Cuyler*, 446 U.S. at 349–50; *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir. 2002). In *Cuyler*, the Court held that prejudice is presumed if the defendant demonstrates that "an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 350; *see also Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct.

1237, 1244, 152 L.Ed.2d 291 (2002) ("[P]rejudice will be presumed only if the conflict has significantly affected counsel's performance–thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown."). The Court has explained that *Cuyler*'s less-exacting standard is appropriate in conflict of interest cases because of the high probability of prejudice that arises from joint representation and the difficulty in measuring that prejudice. *Mickens*, 122 S.Ct. at 1245; *see also Wallace*, 276 F.3d at 366.

■ Although the district court employed the wrong standard in reviewing Thomas's ineffective-assistance claim, the Illinois appellate court utilized the right one. The appellate court expressed and applied the *Cuyler* framework when it stated that "[t]o prevail on a claim of ineffectiveness of counsel based on joint representation of criminal defendants by a single attorney, where the trial court was not apprised of a potential conflict, a defendant must show an actual conflict of interest manifested at trial." Still, Thomas contends that the appellate court got it wrong by requiring a showing of an actual conflict of interest "manifested at trial" because we have said that *Cuyler* contemplates an adverse impact on counsel's overall performance and not just his conduct during trial. *See Griffin v. McVicar*, 84 F.3d 880, 887 (7th Cir.1996). But as the state points out, in *People v. Mahaffey*, 165 Ill.2d 445, 209 Ill.Dec. 246, 651 N.E.2d 174 (Ill.1995), the case upon which the appellate court relied, the Illinois supreme court defined an actual conflict "manifested at trial" in similarly broad terms, citing *Cuyler* and explaining that "[i]n other words, to obtain reversal of the conviction, the defendant must point to some specific defect in defense counsel's strategy, tactics, or decisionmaking attributable to the conflict." *Id.* at 181. The fact that the appellate court used shorthand language to describe the *Cuyler* rule does not mean that it applied a contrary standard. *See Woodford v. Visciotti*, 537 U.S. 19, 123 S.Ct. 357, 359–60, 154 L.Ed.2d 279 (2002).

The issue, then, is whether the Illinois appellate court unreasonably applied *Cuyler* in rejecting Thomas's ineffective-assistance claim. The Supreme Court has cautioned that under AEDPA an unreasonable application is something more than an incorrect one. *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002); *Williams*, 529 U.S. at 410–11. Indeed, a federal court may not grant habeas corpus relief simply because it has independently concluded that the relevant state court decision is incorrect; the state court's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. *Bell*, 122 S.Ct. at 1852. We will not consider a state court's decision unreasonable so long as it is "at least minimally consistent with the facts and circumstances of the case." *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir.2002).

Thomas has not demonstrated that the Illinois appellate court's application of *Cuyler* was incorrect much less unreasonable in light of the facts and circumstances of this case. "The mere fact that co-defendants abandon a pre-trial stance in which they accuse each other of a crime in favor of a common defense does not lead ineluctably to the conclusion that their attorney faced an actual conflict of interest." *Griffin*, 84 F.3d at 887. In such a case, the complaining defendant must point to "specific instances where [his] attorney could have, and would have, done something different if that attorney had represented only one defendant." *Id.* We are not convinced that an attorney representing only Thomas would have done anything differently here.

Thomas argues that conflict-free counsel could have presented a defense tailored to exonerate him by shifting the blame to his codefendant DuBose, against whom the evidence was much stronger. Specifically, Thomas maintains that absent the joint representation counsel could have argued, consistent with Thomas's prior statements to police, that Thomas was an innocent bystander. But, as the Illinois appellate court reasoned, any claim that Thomas was just an innocent bystander would have been belied, for one, by Thomas's admission to police that he asked DuBose whether he needed a weapon to commit the robbery. Although Thomas need not show that this alternative defense had a reasonable likelihood of success, the defense must have at least been a plausible one. *See id.* at 888; *Reynolds v. Chapman,* 253 F.3d 1337, 1343 (11th Cir.2001). Thomas suggests that the police officer lied about him making the statement about the gun and an unconflicted attorney could have better attacked the officer's credibility. But Thomas does not explain how counsel could have possibly discredited the officer's testimony, and, in any event, both Thomas and DuBose had an interest in getting the judge to disbelieve the police officer since she incriminated them both.

■ Thomas also argues that the conflict prevented his counsel from stressing that DuBose was the more culpable insofar as the victim's wallet was found on DuBose, that DuBose admitted to demanding the money, and that DuBose was the one who hit Bullard with the gun. But we do not see how pointing the finger at DuBose would have benefitted Thomas's defense. Thomas's fate was linked to DuBose's not because of the joint defense, but because, by Thomas's own admission, he offered DuBose a weapon, accompanied him during the robbery, fought with Bullard, and fled from the scene with DuBose and the

$30 that Marianna threw during the incident. A defense that stressed DuBose's guilt might have actually sealed Thomas's fate, particularly given the broad scope of accomplice liability in Illinois. A person is legally accountable under Illinois law for the conduct of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS § 5/5–2. Indeed, Thomas did not have to actively participate in the robbery or beating in order to be held accountable. *See In re W.C.,* 167 Ill.2d 307, 212 Ill.Dec. 563, 657 N.E.2d 908, 924 (Ill.1995). As such, counsel's choice of a common defense, attacking the credibility of the state's witnesses and challenging the state's proof of the statutory elements, may very well have been an appropriate one. Under these circumstances we have no trouble concluding that it was reasonable of the Illinois appellate court to hold, in light of *Cuyler,* that counsel's joint representation did not violate Thomas's constitutional right to effective assistance of counsel.

Finally, Thomas asks us to, at a minimum, remand this case to the district court so the court can examine his ineffective-assistance claim with the aid of the transcript from his trial. He argues that the transcript of his trial is needed to fully evaluate his claim, and the district court erred in refusing to supplement the record on appeal to include it. In response, the state contends that it was not obligated to submit the trial transcript as part of the record under Rule 5 of the Rules Governing Habeas Corpus Cases Under § 2254, and the district court was not required to examine it before denying Thomas's petition. True, Rule 5 does not mandate full production of the state trial record; rather, it requires only that the state furnish

"such portions of the transcripts as the [state] deems relevant" and provides that the district court, on its own motion or upon the petitioner's request, may order that additional portions be produced. Accordingly, we have held that the state need not submit, and the district court need not examine, the full trial record in all habeas corpus cases. *See United States ex rel. Green v. Greer,* 667 F.2d 585, 589 (7th Cir.1981). Although Rule 5 does not require that the state furnish the trial transcript in every case, the transcript certainly seems to us to be relevant to Thomas's ineffective-assistance claim, and since, as the state acknowledged at oral argument, the transcript was readily available in the state court file, the state could have simply provided it. Nevertheless, at oral argument Thomas's appointed counsel confirmed that he indeed had obtained and reviewed a copy of the transcript, though it is not part of the record before us. We are confident that if the transcript contained any information helpful to his client's cause, he would have brought it to our attention. Moreover, Thomas was present at his trial, and does not dispute the state appellate court's description of what transpired. So while the transcript might have eased our review, for the reasons discussed it is not necessary to assess the reasonableness of the state appellate court's decision in this case and, therefore, remand is unnecessary.

AFFIRMED