**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 170828-U

Order filed December 16, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| | ) | Appeal No.    3-17-0828 |
| v. | ) | Circuit Nos.   00-CF-1628 |
| | ) | 03-CF-1271 |
| | ) | |
| BRENT SALTZMAN, | ) | The Honorable |
| | ) | Carmen Julia Lynn Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    Trial court properly denied murder defendant's motion for leave to file successive postconviction petition where defendant failed to establish cause for failing to raise ineffective assistance claims earlier, his actual innocence claim was not supported by newly discovered evidence, and "new law" did not require reversal of his conviction based on an allegedly coerced confession.

¶ 2    In 2002, defendant Brent Saltzman was found guilty and sentenced to 28 years in prison for attempted murder, aggravated battery of a senior citizen and aggravated domestic battery for physically assaulting his stepfather, Jack Weber. While defendant's appeal from his convictions

was pending, Weber died from his injuries. We reversed defendant's convictions on appeal. The State then charged defendant with murder. Following a new trial, defendant was found guilty of murder and sentenced to 79 years in prison. Defendant appealed, and we affirmed his conviction and sentence. Thereafter, defendant filed a postconviction petition, which the trial court dismissed. On appeal, we affirmed the dismissal. Seven years later, defendant filed a motion for leave to file a successive postconviction petition, arguing ineffective assistance of trial counsel, actual innocence, and the erroneous admission of an allegedly coerced confession. The trial court denied defendant's motion. We affirm.

¶ 3                                                    BACKGROUND

¶ 4        On October 8, 2000, defendant Brent Saltzman was arrested for brutally assaulting his stepfather, Jack Weber. He was charged by indictment with attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 1998)), aggravated battery of a senior citizen (720 ILCS 5/12-4.6 (West 1998)) and aggravated domestic battery (720 ILCS 5/12-3.2(a)(2) (West 1998)).

¶ 5        Before trial, defendant filed a motion to suppress statements he made to police at the Will County Sheriff's Department. At the hearing on the motion, Kimberly Giugler, a Sherwood police officer, testified that as soon as defendant was brought into the Sherwood police station, he began making incriminating statements. Defendant remained at the police station for less than an hour. Giugler denied that defendant was threatened or physically assaulted. Giugler transported defendant to the Will County Jail at approximately 1:20 p.m. on October 8, 2000.

¶ 6        Sergeant Edward Bradley of the Will County Sheriff's Office transported defendant from the Will County Jail to the Eagle Building of the Will County Sheriff's Department at approximately 8:30 p.m. on October 8, 2000. When Bradley first saw defendant, he did not notice any injuries or blood on defendant or his clothing. Defendant did not tell Bradley he had been

2

physically assaulted at the jail. Bradley turned defendant over to Edward Hayes, a Will County sheriff's deputy, in the Eagle Building. After defendant provided a statement to Hayes, Bradley saw defendant, and he seemed "okay." Bradley still saw no marks or bruises on defendant but noticed blood on defendant's clothing at that time.

¶ 7        Hayes testified that he met defendant at approximately 9:00 p.m. on October 8, 2000, in an interview room in the Eagle Building, where defendant had been taken from the county jail. Hayes noticed nothing unusual about defendant when he saw him. Defendant gave Hayes and his partner an oral and videotaped statement. Hayes denied that any force was used against defendant or that any threats or promises were made to defendant in his presence. According to Hayes, defendant never complained of anyone using force against him. Hayes denied seeing any injuries on defendant.

¶ 8        Defendant testified that he was taken to the Will County Jail at approximately 1:00 p.m. on October 8, 2000. He began feeling claustrophobic and "tried to run out of the place to a door that would lead out to, like, the garage, where I could get out." After that, a deputy grabbed him and forcefully put his arm behind his back. Then, another deputy ran toward him and started punching him in the face. Defendant said that deputy punched him several times in the head. After that, five or six deputies threw defendant into a cell and started punching and kicking him. Defendant estimated that the punching and kicking lasted 45 seconds. He thought he was punched 10 to 15 times in the head. After the punching and kicking, the deputies slammed the door to the cell, and defendant remained inside for five or six hours. He stayed there until Sergeant Bradley came to get him.

¶ 9        When questioned further, defendant said the deputies also put him in a chair with straps to tie him down and punched him "a lot in the chair." He said he was tied to the chair for two or three

3

hours. He said he was "very afraid" during his interview with Hayes because he thought he might be punched and kicked again. He admitted that Hayes and his partner never assaulted him. He said he cooperated with Hayes because he was afraid of being beaten. Defendant admitted that the blood on his clothing was not his. He thought it was Weber's.

¶ 10 The trial court denied defendant's motion to suppress. Prior to trial, defendant's attorney, George Lynch, filed a motion for the psychiatric evaluation and treatment of defendant. The trial court granted the motion. Thereafter, the court appointed Dr. Randi Zoot and Dr. Thomas Hardy to determine defendant's sanity at the time of the offense. Zoot prepared a report concluding that "Brent Saltzman did not suffer from a mental disorder that impaired his ability to understand the wrongfulness of his actions." Dr. Thomas Hardy also prepared a report in which he concluded: "[A]t the time of the crime, Mr. Saltzman knew what he was doing and appreciated that what he was doing was wrong, and was therefore legally sane." Defendant's case proceeded to trial in February 2002. Lynch did not raise an insanity defense.

¶ 11 The jury found defendant guilty of all counts, and the trial court sentenced defendant to 28 years in prison. Defendant appealed. We reversed defendant's conviction, finding that the trial court improperly denied defendant's motion for substitution of judge. *People v. Saltzman*, No. 3-02-0341 (2003). While defendant's case was on appeal, Weber died from his injuries. A new indictment was filed against defendant charging him with first degree murder (720 ILCS 5/9-1(a)(1) (West 2000)). The new indictment and the original indictment were consolidated, and the case proceeded to a new trial at which Ira Goldstein represented defendant.

¶ 12 From April 2004 to February 2005, defendant was found unfit to stand trial. In July 2005, the court ordered Dr. James Corcoran to examine defendant "for the purpose of rendering an

4

opinion regarding the issue of insanity in this cause." Corcoran drafted a report on October 20, 2005, which stated in pertinent part:

> "**After a careful review of all available data, it is this examiner's opinion to a reasonable degree of medical certainty that Brent Saltzman, due to the mental disease of Schizophrenia, Paranoid Type, lacked substantial capacity to appreciate the criminality of his actions at the time of the commission of the crime for which he is charged.** He was **Legally Insane** at the time of the crime for which he is charged." (Emphasis in original.)

Corcoran further stated: **"It is this examiner's opinion to a reasonable degree of medical and psychiatric certainty that Mr. Brent Saltzman did not have the specific intent, nor was he able to form the specific intent to kill his stepfather, Jack Weber, at the time of the incident for which he is charged due to Schizophrenia, Paranoid Type."** (Emphasis in original.)

¶ 13    The State filed a motion *in limine* to bar Corcoran's testimony regarding defendant's lack of intent. The trial court granted the motion. The trial court entered an order allowing Dr. Carl Wahlstrom to examine defendant on the issue of sanity. Dr. Wahlstrom issued a report finding that defendant suffered from several mental illnesses, including intermittent explosive disorder, schizoid personality disorder, antisocial personality disorder features and schizotypal personality disorder features, but concluded that defendant "was not insane at the time of the offense."

¶ 14    Defendant filed a motion *in limine* to bar a portion of the 911 call placed by his mother at the time of the incident. He also filed a motion to sever his charges. The trial court denied both motions. Defense counsel did not file a motion to suppress the statements defendant made to the Will County officers on the night of the incident.

¶ 15    At defendant's second trial, defendant presented an expert who testified that negligent medical treatment caused Weber's death, not the injuries Weber received on October 8, 2000. Goldstein did not raise the defense of insanity at trial. The jury found defendant guilty of murder and attempted murder.

¶ 16    At defendant's sentencing hearing, defendant's mother testified that beginning in 1999, defendant "just was not himself." He seemed depressed and withdrawn. In September 1999, she asked hospital staff to admit defendant to the hospital, but they refused because defendant was not suicidal. Defendant's father also testified that defendant seemed to change in 1999. He stopped leaving the house and became paranoid. Dr. Corcoran testified that he met with defendant in jail on August 25, 2005. He diagnosed defendant with schizophrenia paranoid type. He opined that defendant was suffering from that disorder in October 2000. Dr. Corcoran believed the October 8, 2000, incident occurred because of defendant's mental illness.

¶ 17    The trial court sentenced defendant to 79 years in prison for murder. Defendant filed a motion for new trial and a motion to reconsider his sentence. The trial court denied both motions. Defendant appealed. On appeal, defendant was represented by Kathleen Zellner, Douglas Johnson and Nicholas Curran of the Law Office of Kathleen T. Zellner & Associates. Defendant argued on appeal that (1) the trial court erred in denying his motion to sever his charges, (2) certain evidence, including portions of his mother's 911 call and statements he made to officers, should have been excluded, (3) he was not proven guilty beyond a reasonable doubt, and (4) his sentence was excessive. We affirmed defendant's conviction and sentence. *People v. Saltzman*, No. 3-07-0046 (2008) (unpublished order under Supreme Court Rule 23).

¶ 18    In 2009, defendant, again represented by Lynch, filed a postconviction petition. He alleged that (1) Goldstein was ineffective for failing to file a motion to suppress his statements to Will

County officers, (2) appellate counsel was ineffective for failing to argue plain error, and (3) Goldstein was ineffective for failing to file a motion to appoint a special prosecutor or the Illinois Attorney General's office to prosecute him. The trial court dismissed defendant's postconviction petition, finding it "frivolous and without merit." Defendant filed a motion to reconsider, which the trial court denied. Defendant appealed. We affirmed. *People v. Saltzman*, No. 3-09-0535 (2010) (unpublished order under Supreme Court Rule 23). We found that even if a motion to suppress had been filed and granted, it would not have changed the outcome of the trial because "[t]he evidence presented at trial was sufficient to establish the defendant's guilt, even without the statements the defendant made to Will County police officers." *Id*. at 6.

¶ 19        In 2017, defendant filed an amended motion for leave to file a successive postconviction petition. Defendant argued (1) he was denied effective assistance by Lynch because he failed to raise an insanity defense at his first trial, (2) he was denied effective assistance by Goldstein because he failed to raise an insanity defense at his second trial, (3) there was newly discovered evidence in the form of an opinion from a psychiatrist that he was insane at the time of the crime, and (4) "new case law" established that admission of his allegedly coerced confession was reversible error. Attached to the motion was a report, dated June 11, 2014, from Lisa Rone, a psychiatrist, who, after examining defendant in 2013, concluded: "On October 8, 2000, *** Mr. Saltzman was insane *** and lacked substantial capacity to appreciate the criminality of his conduct." The State filed an objection to defendant's motion. After hearing arguments, the trial court denied defendant's motion.

¶ 20                                    ANALYSIS

¶ 21        The Postconviction Hearing Act (Act) provides a method for a criminal defendant to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of

7

his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47. Thus, when a petitioner has previously appealed a judgment of conviction, the judgment of the reviewing court will bar, under the doctrine of *res judicata*, postconviction review of all issues presented and decided by the reviewing court, and any claims that could have been presented to the reviewing court will be deemed waived. *People v. Edwards*, 2012 IL 111711, ¶ 21. Additionally, "a ruling on an initial postconviction petition has *res judicata* effect with regard to all claims that were raised or could have been raised in the initial petition." *People v. Guerrero*, 2012 IL 112020, ¶ 17. Any claim of substantial denial of constitutional rights not raised in an original postconviction petition is waived. 725 ILCS 5/122-3 (West 2016).

¶ 22        Both the language of the Act and the case law make clear that only one postconviction proceeding is contemplated. *Edwards*, 2012 IL 111711, ¶ 22. However, there are two bases upon which the bar against successive proceedings will be relaxed: (1) when a petitioner can establish "cause and prejudice" for failure to raise the claim earlier, and (2) when a petitioner shows actual innocence. *Id*. ¶¶ 22-23. A petitioner "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial postconviction proceedings" and "shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016)). "The elements of a claim of actual innocence are that the evidence in support of the claim must be 'newly discovered' material and not merely cumulative; and of such conclusive character that it would probably change the result on retrial." *Edwards*, 2012 IL 111711, ¶ 32.

8

¶ 23    A petitioner seeking to institute a successive postconviction proceeding must first obtain "leave of court." *Id.* ¶ 24. The petitioner has the burden of obtaining leave of court and must present sufficient evidence for the trial court to determine that leave of court should be granted. *Id.* Leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the petition and documents submitted, that the claims alleged by the petitioner fail as a matter of law or where the successive petition and supporting documents are insufficient to justify further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35. With respect to a successive petition alleging actual innocence, leave of court should be denied where it is clear from a review of the petition and supporting documents that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence. *Edwards*, 2012 IL 111711, ¶ 24.

¶ 24    We review a trial court's denial of leave to file a successive postconviction *de novo*. *People v. Diggins*, 2015 IL App (3d) 130315, ¶ 7. Where a successive postconviction fails to satisfy either the "actual innocence" or "cause and prejudice" bases, a reviewing court should affirm the trial court's denial of the defendant's motion for leave to file the successive postconviction petition. See *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 75.

¶ 25                    I. Ineffective Assistance Claims

¶ 26    In his successive petition, defendant argued that he was denied effective assistance of counsel by his attorneys in his first and second trials because they failed to raise insanity defenses. Defendant asserted that he could not have raised the ineffective assistance claim against Lynch, his first attorney, on direct appeal or in his original postconviction petition because "in all of these proceedings, [he] was represented by George Lynch, the attorney who first failed to raise the insanity defense." He further asserted that he could not have raised his claim of ineffective assistance against Goldstein, his second attorney, either (1) on direct appeal "because there was no

9

record evidence that [he] lacked the substantial capacity to appreciate the criminality of his conduct", or (2) in his first postconviction petition because "Lynch would have had to argue his own ineffectiveness."

¶ 27    Because this is a successive petition and the first time defendant has raised his ineffective assistance claims, those claims will be considered waived unless application of the cause-and-prejudice test dictates otherwise. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002). Here, defendant claims that he had "cause" not to raise his ineffective assistance claims against Lynch on direct appeal and in his first postconviction petition because Lynch served as his appellate and postconviction counsel and could not be expected to make an ineffective assistance claim against himself.

¶ 28    We recognize that "it would be fundamentally unfair to expect * * * counsel to raise and argue convincingly his own incompetence." *People v. Mahaffey*, 165 Ill. 2d 445, 458-59 (1995). However, defendant's allegations are refuted by the record because Lynch did not serve as defendant's appellate counsel. On direct appeal, defendant was represented by Kathleen T. Zellner & Associates, not Lynch. Defendant has failed to provide cause for appellate counsel's failure to raise ineffective assistance on direct appeal. Thus, his claim of ineffective assistance against Lynch is waived. See *Edwards*, 2012 IL 111711, ¶ 21.

¶ 29    With respect to defendant's ineffective assistance claim against Goldstein, defendant asserts that he could not have raised this claim on appeal because at that time, there was "no record evidence that [he] lacked the substantial capacity to appreciate the criminality of his conduct." This claim is also refuted by the record. On October 5, 2005, Corcoran issued his report, finding that defendant "due to the mental disease of Schizophrenia, Paranoid Type, lacked substantial capacity to appreciate the criminality of his actions at the time of the commission of the crime for

which he is charged." Thus, two years before defendant's appeal was filed, there was "record evidence that [defendant] lacked the substantial capacity to appreciate the criminality of his conduct."

¶ 30    Similarly, defendant's assertion that he could not have raised Goldstein's ineffectiveness in his first postconviction petition because "Lynch would have had to argue his own ineffectiveness" lacks support from the record. Lynch was defendant's counsel for his first trial and during the original postconviction proceedings. Goldstein, not Lynch, was defendant's attorney at his second trial. Thus, an ineffective assistance claim raised by Lynch with respect to defendant's second trial would have required Lynch to argue that Goldstein, not himself, provided ineffective assistance to defendant. Because the ineffective assistance of Goldstein could have been raised by defendant on direct appeal and in his first postconviction petition, that issue is waived. See *Edwards*, 2012 IL 111711, ¶ 21; 725 ILCS 5/122-3 (West 2016).

¶ 31    Defendant failed to establish cause for not raising his ineffective assistance claims prior to his successive postconviction petition. Thus, the trial court properly denied defendant's motion for leave to file his successive petition.

¶ 32                                    II. Actual Innocence Claim

¶ 33    Defendant's successive petition also raises a claim of actual innocence based on insanity. Defendant asserts that the 2014 report from Rone is newly discovered evidence that he was insane when he committed murder.

¶ 34    "Newly discovered evidence is evidence that was unavailable at trial and could not have been discovered sooner through due diligence." *People v. Harris*, 206 Ill. 2d 293, 301 (2002). The newly discovered evidence must not be cumulative of other evidence and must be of such a

11

conclusive character that it would probably change the result upon retrial. *Edwards*, 2012 IL 111711, ¶ 32.

¶ 35        Here, defendant presented the report of Dr. Rone as newly discovered evidence that defendant was insane when he committed murder. However, the report does not qualify as newly discovered evidence because it is cumulative of the report prepared by Dr. Corcoran nearly ten years earlier. In his 2005 report, Dr. Corcoran concluded that defendant "lacked substantial capacity to appreciate the criminality of his actions at the time of the commission of the crime for which he is charged" and was "[l]egally [i]nsane at the time of the crime for which he is charged." Because Rone's opinions were identical to those set forth in Corcoran's report, Dr. Rone's report does not constitute newly discovered evidence of actual innocence. It is clear from a review of defendant's petition and supporting documents that, as a matter of law, defendant cannot set forth a colorable claim of actual innocence; thus, the trial court properly denied defendant's motion for leave to file his successive postconviction petition. See *Edwards*, 2012 IL 111711, ¶ 24.

¶ 36                            III. Allegedly Coerced Confession

¶ 37        Finally, defendant argues that the trial court erred in denying him leave to file his successive postconviction petition because the supreme court's decision in *People v. Wrice*, 2012 IL 111860, requires us to consider the admission of his "coerced confession" prejudicial and award him a new trial.

¶ 38        Defendant's argument fails for several reasons. First, defendant raised the issue of his "coerced confession" both on appeal and in his first postconviction petition. Thus, *res judicat*a bars further litigation of this issue. See *Guerrero*, 2012 IL 112020, ¶ 17. Furthermore, defendant misconstrues *Wrice* as establishing a "new rule of law" that use of a coerced confession is never harmless error. *Wrice* did not establish such a rule. In 1987, the supreme court in *People v. Wilson*,

12

116 Ill. 2d 29, 41 (1987), held that "use of a defendant's coerced confession as substantive evidence of his guilt is never harmless error." The supreme court in *Wrice* simply recast the rule, in light of the United States Supreme Court's decision in *Arizona v. Fulminante*, 499 U.S. 279 (1991), to state that "use of a defendant's *physically* coerced confession as substantive evidence of his guilt is never harmless error." (Emphasis in original.) *Wrice*, 2012 IL 111860, ¶ 71. The rule that use of a coerced confession is never harmless error preceded defendant's trial and appeals. Therefore, defendant has not established that he is now entitled to a new trial because of this "new rule of law."

¶ 39 Finally, defendant cannot satisfy the cause portion of the cause and prejudice test based on this case because he has failed to present any new evidence supporting his claim of a coerced confession that was somehow unavailable to him on appeal or in his first postconviction petition. See *Wrice*, 2012 IL 111860, ¶ 85. "[A] bare assertion that the defendant's confession was physically coerced will not establish 'cause' for purposes of the cause-and-prejudice test." *Id.*

¶ 40 Here, the trial court considered defendant's claim that his confession was allegedly coerced at the suppression hearing prior to defendant's first trial. At that time, defendant and several officers testified. Defendant testified that he was severely beaten by deputies in the Will County Jail, while officers from the Will County Sheriff's Office testified that they did not harm nor threaten defendant, nor did they see any evidence of injuries on the defendant's body. While one officer noticed blood on defendant's clothing, defendant admitted that the blood was not his and likely came from Weber. After hearing the evidence presented, the trial court denied defendant's motion to suppress his confession, finding that the confession was not coerced. Defendant did not present any new evidence of coercion in his supplemental postconviction petition. Thus,

13

defendant's coercion claim fails as a matter of law, and the trial court properly denied defendant's motion for leave to file a successive postconviction petition.

¶ 41                                     CONCLUSION

¶ 42          The judgment of the circuit court of Will County is affirmed.

¶ 43          Affirmed.