2023 IL App (1st) 221026-U

No. 1-22-1026

Order filed December 22, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 18 CR 9038 |
| KENON WILLIAMS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Brian Flaherty, |
| | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held:*  The trial court did not abuse its discretion in excluding evidence of the complainant's prior crimes and prior bad acts. Affirmed.

¶ 2     Following a jury trial, defendant, Kenon Williams, was found guilty of attempted first-degree murder, aggravated discharge of a firearm, and unlawful use of a weapon (UUW) by a felon. The court merged the counts of attempted murder and aggravated discharge of a firearm,

and sentenced defendant to concurrent terms of 26 years for attempted murder and 14 years for UUW by a felon. On appeal, defendant contends that the trial court abused its discretion when it excluded evidence of the victim's prior domestic battery convictions, evidence of a prior confrontation the victim had with another man, and evidence of the victim's past anger and jealousy. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                  A. Pretrial Motions

¶ 5     Prior to trial, defendant filed a motion *in limine* to admit prior bad acts and crimes of Jeffrey Mason, the complainant. Defendant claimed that the undisputed evidence would show that Mason's girlfriend, Quanetta Webb, drove Mason to his home in Calumet City on the evening of May 13, 2018. Webb informed Mason that she was going to sleep at her home in South Holland and would return to pick Mason up the next morning. The next morning, Mason was out walking his dog and discovered Webb's car parked on Paxton Avenue, which was a "clear indication that Ms. Webb had lied to Mr. Mason about where she was and where she had slept the night before." Defendant claimed in his motion that upon seeing Webb's car, Mason got in the back seat of her car and waited for her to return to her vehicle. Defendant explained that his defense theory at trial would be that Mason – not defendant – was the initial aggressor and the only individual armed with a firearm on the morning of May 14, 2018.

¶ 6     To support his defense theory, defendant asked to admit evidence of Mason's two prior arrests for domestic battery against Webb. Defendant argued that these arrests were admissible pursuant to Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) because they would demonstrate that Mason had "intended, planned, and prepared to violently confront Ms. Webb on the morning of May 14, 2018."

¶ 7    Defendant also sought to admit evidence of Mason's prior bad act against Jermaine Fields, who would testify that Mason confronted him "with a firearm when Mr. Mason learned of Mr. Fields' sexual relationship with Quanetta Webb in July 2017." Fields' affidavit was attached to the motion, wherein Fields stated that Mason called him on the phone and made threatening comments to him when he learned of Fields' and Webb's relationship. Fields stated that Mason came to his residence and confronted him with a gun that same day. Defendant argued that Fields' testimony was admissible pursuant to Rule 404(b) to show that he "has a behavioral pattern of violently confronting Ms. Webb's paramours with firearms."

¶ 8    During hearings on the motions *in limine*, the State argued that evidence of Mason's prior bad acts was not admissible because defendant was not alleging self-defense and had not filed a motion to admit the evidence pursuant to *People v. Lynch*, 104 Ill. 2d 194 (1984). Defense counsel responded that defendant was not filing an affirmative defense of self-defense or a motion to introduce Mason's prior bad acts pursuant to *Lynch* because the defense theory was that Mason was the "initial" and "final" aggressor. Defendant's theory of defense was that Mason fired shots at him, but he did not have a firearm and therefore did not fire any shots back at Mason.

¶ 9    The trial court denied defendant's request to admit evidence of Mason's prior bad acts. It acknowledged that defendant sought to admit evidence of Mason's prior arrests for domestic violence against Webb as evidence that Mason "intended, planned, prepared to violently confront Ms. Webb," but found that this evidence was not relevant or admissible because Mason's past domestic violence arrests were "against the witness, not against [defendant]."

¶ 10    The trial court found that the prior bad act of Mason's confrontation with Fields was not admissible because "there's not enough here to show that this is an unusual incident that the

defendant had. There's not enough there to show *modus operandi*, nothing unusual or specific about this incident. So that will not be allowed."

¶ 11                                    B. Trial

¶ 12    The following evidence was presented at trial. Mason testified that on the date in question, he was on parole for aggravated fleeing and eluding. On Sunday, May 13, 2018, it was Mother's Day, so he spent the day with Webb, the mother of his child. She dropped him off at home that night promising to be back the next morning to pick him up on the way to court. The next morning, Mason was walking his dog when he saw Webb's car parked in the neighborhood, even though she had said she would be in South Holland for the night. Mason testified that the door was open, so he got into the back seat, behind the driver's seat.

¶ 13    Mason stated that a short time later Webb approached the car with defendant. Webb approached the driver's side while defendant approached the passenger side. Mason attempted to get out of the car, but was "shot at" and saw a bullet hole in his pant leg. He then got out of the car and "circled around the car." He was being shot at and fell. After he fell, "we fought over the gun" and Mason "got possession of it." When asked what happened after Mason got possession of the gun, he stated, "I shot [defendant]." When the police came, he did not have the gun at that point but had the magazine because "it came out of the gun." The gun was on the ground.

¶ 14    On cross-examination, Mason testified that at the time of the incident he had been in a relationship with Webb for "ten-plus years" and they had a four-year-old daughter together. When asked what happened to Mason's dog, Mason stated that he walked the dog back home before coming back to Webb's car. Mason also testified that after he wrestled the gun away from defendant, he shot defendant in the stomach. He then hit defendant in the face with the magazine

of the gun. Mason testified that defendant shot at him three times, and he shot at defendant once, for a total of four shots fired.

¶ 15    Webb testified she was in a "complicated" relationship with Mason at the time of the incident. She testified that she was still in a relationship with Mason on the date of trial. Webb stated that on the night of Mother's Day 2018, she dropped Mason off at his house and told him she was going back to South Holland, but in fact she went to defendant's house. She had plans to see Mason the next morning, as he was accompanying her to traffic court in Indiana.

¶ 16    The next morning, defendant drove Webb to her vehicle, which was a two-door red Cavalier. They got out of defendant's car and as Webb tried to get into the driver's seat she was startled by Mason in the back of the car. Mason jumped up and started yelling at her about "being with the other guy." Webb testified that she then heard a gunshot from the passenger side. Everybody then started running. She ran towards the front of the car, and the men ran towards the back of the car. When Webb turned around, she could see the men fighting. She saw them go into the woods. Then the police arrived.

¶ 17    On cross-examination, Webb testified that at the time of the incident she was with both defendant and Mason, and that they knew about each other. On the night of Mother's Day, she lied to Mason about where she was going after she dropped him off. When asked if Mason had caught Webb with other men before, the trial court sustained an objection by the State. Defense counsel requested a side bar, which was granted. At the side bar, defense counsel argued that it was appropriate to ask Webb about whether she had been caught with other men so that she could elicit from Webb that Mason was jealous and that his rage would give Webb the motive to lie at trial because she was afraid of him. The court sustained the objection.

¶ 18    Webb testified that she did not park right by defendant's house because she did not want Mason to know she was there. The next morning defendant drove her to her car because it was raining. She never saw defendant with a gun that morning.

¶ 19    Officer Keith Kwiatkowski testified that he was on duty on the date in question and was assigned to investigate the incident. When he arrived on the scene he observed a red Chevy Cavalier with a shattered passenger side window, a shell casing just outside the passenger side of the vehicle, and a bullet hole in the backseat of the car. Mason was in the back of a police car, and defendant was in an ambulance.

¶ 20    On cross-examination, Officer Kwiatkowski testified that he interviewed Webb on the date of the incident, as well as on June 8, 2018. When he interviewed Mason, Mason told him that he had been out smoking on the date in question, not walking his dog. Mason told Officer Kwiatkowski that defendant fired at him two times.

¶ 21    Investigator William Gavin testified that when he arrived on the scene, Mason directed him to the gun in the forest preserve area. The loaded magazine had been separated from the gun when he received it. He only found one shell casing at the scene. He saw a bullet hole in the backseat of the car. In Gavin's opinion, a bullet was fired from the passenger side of the vehicle because a bullet fired from the passenger side of the vehicle would leave a cartridge on the grass on the passenger side of the car.

¶ 22    Doctor Bill Cheng, a forensic scientist, testified that he tested the loaded magazine for DNA. There were 30 cartridges – he swabbed 29 of them (the ones in the cartridge), but not the one on top because he had received information that the victim may have touched the outside of the magazine. He also swabbed the outside of the magazine. On cross-examination, Dr. Cheng testified that he did not receive a DNA sample from Mason.

¶ 23    Lyle Boicken, a forensic scientist, testified that he received the swabbed cartridges and a buccal standard from defendant. Boicken found only one DNA profile on the swabs of the cartridges, meaning "there is not more than one person involved in the sample." Boicken compared this profile to defendant's DNA profile and determined that defendant "could not be excluded" from the single DNA profile extracted from the swab of the cartridges.

¶ 24    Thomas Halloran, a forensic scientist, testified that he analyzed three pieces of firearms evidence: a Glock model 19 firearm, an extended magazine cartridge case loaded with 30 bullets, and a single, fired cartridge casing. Halloran determined that the casing was fired from the Glock 19 firearm.

¶ 25    The parties stipulated that defendant had previously been convicted of a felony offense that would qualify him for charging under the UUW statute. The State then rested. Defendant informed the court that he did not wish to exercise his right to testify.

¶ 26    Defense counsel called Officer Johnathan Henderson, who testified that he responded to the incident, and saw that defendant was bleeding from his left side of the body, holding his stomach. Officer Henderson then placed Mason in the back of his squad car.

¶ 27    On cross-examination, Officer Henderson identified a photograph of Mason's pants and explained that it was taken while Mason was sitting in the back of his squad car. It depicted a circular hole in Mason's upper left pant leg.

¶ 28    The parties stipulated that a Calumet City Police Department medic arrived at the scene at 7:30 a.m. on the date in question and transported defendant to the hospital. Medical personnel determined that defendant suffered a gunshot wound to his torso.

¶ 29    During closing arguments, the prosecution stated that defendant pointed a gun at Webb's passenger side window and fired into the backseat at Mason, narrowly missing his leg. The State

argued that the physical evidence of the shattered passenger side window, the fired shell casing outside the passenger side door, and the path of the bullet hole in the backseat of Webb's car, established that the firearm was discharged from the passenger side of the vehicle. The State argued that the single-source DNA, consistent with defendant's DNA, was found on the unfired cartridges inside the magazine, which suggested defendant was the one that loaded the cartridges into the magazine.

¶ 30    Defense counsel countered that Webb and Mason lied to police and the jury. She opined that because Mason was on parole at the time of the incident, he had to "come up with a story to save himself." Defense counsel stated that if Mason had not come up with a story pinpointing defendant as the aggressor, he would have been charged with shooting defendant. She argued that Mason had a "clear motive to lie." Defense counsel argued that Webb ultimately wanted to protect Mason because he was the father of her child, and she lived with him.

¶ 31    Following deliberations, the jury found defendant guilty of attempted murder, aggravated discharge of a firearm, and UUW by a felon.

¶ 32                                  C. Post-Trial Motions

¶ 33    Defendant filed a motion for a new trial, arguing in pertinent part that the court erred when it barred defendant from admitting evidence of Mason's prior domestic violence against Webb and his prior bad act involving Fields. The court found that its prior ruling on the motions *in limine* regarding this evidence was "appropriate considering the evidence presented" at trial and denied defendant's motion for a new trial.

¶ 34    The court merged defendant's aggravated discharge of a firearm conviction with his conviction for attempted murder and imposed the minimum sentence of concurrent 26-year and 14-year terms in the Illinois Department of Corrections. Defendant now appeals.

¶ 35                                    II. ANALYSIS

¶ 36    On appeal, defendant contends that the trial court erred when it denied his requests to admit: (1) evidence of Mason's prior arrests for domestic violence against Webb; (2) testimony from Fields, who was attacked by Mason for having an affair with Webb; and (3) evidence that Webb's infidelity with other men sent Mason into "a violent state of rage." Defendant contends that without this evidence, defendant could not substantiate his defense theory, and thus the trial court's evidentiary rulings deprived him of the right to present a defense. The State responds that defendant had no legal basis to admit evidence of Mason's violent character during trial.

¶ 37    Initially, we note that evidence of a person's character is not generally admissible for the purpose of proving action in conformity therewith on a particular occasion. Ill. R. Evid. 404(a) (eff. Jan. 1, 2011). Although the law provides an exception to this rule in cases where the accused raises a theory of self-defense, a defendant "may not introduce evidence of the victim's character until some evidence has been presented that the victim was, or appeared to be, the assailant, and that the defendant therefore acted in self-defense." *Lynch*, 104 Ill. 2d 194, 204 (1984). Defendant's theory of defense, however, is not self-defense. Rather, his theory is that Mason was the initial and sole aggressor, shooting defendant in the abdomen during the incident in question. Defendant's theory is that he did not have a gun on the date in question and did not fire shots at Mason at any point during the incident. Accordingly, the *Lynch* exception is not applicable in this case.

¶ 38                          A. Domestic Violence Arrests

¶ 39    We first address the trial court's denial of defendant's motion *in limine* seeking to introduce evidence of Mason's prior arrests for domestic violence against Webb. Defendant contends that the prior arrests were admissible under Illinois Rule of Evidence 404(b) to show intent – that Mason hid in Webb's car with the intention of attacking Webb. Rule 404(b) states that evidence

9

of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, "[s]uch evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. Evid. R. 404(b) (eff. Jan. 1, 2011).

¶ 40    Evidentiary rulings, including whether to grant motions *in limine*, are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id*. "[R]easonable minds [can] differ" about whether such evidence is admissible without requiring reversal under the abuse of discretion standard. *People v. Illgen*, 145 Ill. 2d 353, 375-76 (1991). The reviewing court "owes some deference to the trial court's ability to evaluate the impact of the evidence on the jury." *People v. Donoho*, 204 Ill. 2d 159, 186 (2003). We "may not simply substitute [our] judgment for that of the trial court" on these matters. *Illgen*, 145 Ill. 2d at 371.

¶ 41    Here, defendant argues that the "jury could have inferred from Mason's prior violence toward Webb that, upon discovering Webb's infidelity with [defendant], Mason hid in Webb's car with the intention of attacking Webb that morning." We note that Mason admitted at trial to hiding in Webb's car because he suspected her of infidelity and intended to confront her. To the extent that defendant is arguing that because he had committed domestic violence against Webb in the past, he was intending to do so again on the date in question, it was within the trial court's discretion to find such evidence inadmissible to prove Mason was a violent person and that he acted in conformity therewith. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011) (evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

conformity therewith). Accordingly, we find that it was not "arbitrary, fanciful, or unreasonable" for the trial court to deny defendant's motion *in limine* seeking to introduce evidence of Mason's past arrests for domestic violence. *Caffey*, 205 Ill. 2d at 89.

¶ 42                                            B. Prior Bad Act

¶ 43     Next, we address defendant's argument that the trial court abused its discretion in denying his motion *in limine* to introduce evidence of Mason's prior bad act of confronting Fields. According to Fields' affidavit, Mason threatened and confronted him with a gun in 2017 after discovering that Webb was having an affair with Fields. Defendant claims that this "pattern of confronting Webb's paramours with a gun" was admissible as proof of Mason's *modus operandi* under Rule 404(b).

¶ 44     As stated above, evidence of prior bad acts may be admitted to prove any matter other than propensity that is relevant to the case including "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). When using other-crime evidence to establish *modus operandi*, there must be a "strong and persuasive showing of similarity" between the charged crime and the other-crime evidence. *People v. Tate*, 87 Ill. 2d 134, 141 (1981). The offenses "must share such distinctive common features as to earmark both acts as the handiwork of the same person." *People v. Illgen*, 145 Ill. 2d 353, 372 (1991). The degree of similarity required to introduce other-crime evidence under the *modus-operandi* or common-design exceptions is higher than for any of the other exceptions. *People v. Wilson*, 214 Ill. 2d 127, 140-41 (2004).

¶ 45     Here, defendant is attempting to draw similarities between the prior bad act of confronting Fields with a gun, and his theory of defense that Mason laid in wait in the backseat of Webb's car with a gun, intending to confront defendant. However, there was no evidence offered at trial to

support that theory. Rather, the evidence showed defendant shot a bullet into the passenger side of the car, shattering the window and leaving a shell casing on the grass and a bullet hole in the backseat. Defendant's DNA was found on the loaded cartridges of the magazine recovered from the scene. There was no evidence presented indicating that Mason had a gun on the date in question.

¶ 46 Moreover, even if there was evidence to support defendant's theory that Mason was lying in wait to shoot defendant, the alleged offense does not "share such distinctive common features" as Mason's confrontation with Fields so as to "earmark both acts as the handiwork of the same person." *Illgen*, 145 Ill. 2d at 373. Fields stated in his affidavit that in 2017, when Mason learned of his relationship with Webb, Mason called him and made threatening comments to him over the phone. Mason then went to Fields' residence and confronted him with a gun. This is different than defendant's theory of defense that Mason, upon discovering Webb's car, hid in the backseat intending to shoot defendant. Accordingly, we find that the trial court's denial of defendant's motion *in limine* seeking to introduce evidence of Mason's confrontation with Fields was not arbitrary, fanciful, or unreasonable, and that the court did not abuse its discretion in denying the motion.

¶ 47                    C. Mason's Reactions to Past Infidelity

¶ 48 Finally, defendant contends that the trial court abused its discretion when it sustained the State's objections to questions defense counsel posed to Webb on cross-examination regarding Mason's reactions to Webb's past infidelity. Defendant contends that evidence of Mason's anger over Webb's past infidelities would have supported the inference that he was jealous and angry over Webb's affair with defendant, making it more probable that Mason had a motive to harm defendant.

¶ 49    The confrontation clause of the sixth amendment of the United States Constitution (U.S. Const., amend. VI) guarantees a defendant the right to cross-examine a witness. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); *People v. Klepper*, 234 Ill. 2d 337, 355 (2009). We will not reverse a trial court's decision to limit cross-examination absent "a clear abuse of discretion resulting in manifest prejudice to the defendant." *People v. Kirchner*, 194 Ill. 2d 502, 536 (2000).

¶ 50    We reiterate that Rule 404(b) prohibits evidence of other bad acts "to prove the character of a person in order to show action in conformity therewith." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Accordingly, it was within the trial court's discretion to find that defendant was not entitled to elicit evidence of Mason's past jealousy over Webb's affairs to prove that he was jealous over the affair with defendant. See *Knight*, 309 Ill. App. 3d at 227 ("The fact that the defendant had a jealous nature was not specific enough to establish motive for the crime at issue."). Additionally, evidence was introduced at trial showing that Mason suspected Webb was cheating on him and entered her vehicle to lie in wait. It could certainly be inferred that Mason was angry that Webb was cheating on him or that she had lied to him. Because we cannot say that no reasonable person could have found that evidence of Mason's past reactions to Webb's cheating constituted propensity evidence, we find that the trial court did not abuse its discretion in limiting defense counsel's cross-examination of Webb regarding her prior infidelities.

¶ 51                                          D. Prejudice

¶ 52    Defendant argues that he was prejudiced by the "erroneous rulings" of the trial court excluding evidence of Mason's domestic battery arrests, his confrontation with Fields, and his reaction to Webb's prior infidelity. However, as explained above, there were no legal bases to admit such evidence. Having decided that the trial court's evidentiary rulings were not erroneous, we need not consider defendant's claim of prejudice based on those rulings.

¶ 53                    E. Ineffective Assistance of Counsel

¶ 54    Alternatively, defendant argues that trial counsel's various attempts to admit evidence of Mason's violent character were inadequate and amounted to ineffective assistance of counsel. Specially, defendant argues that trial counsel should have offered evidence of Mason's violent encounter with Fields as proof of Mason's intent, rather than *modus operandi*, and Mason's domestic violence arrests as proof of Webb's motive to lie. Defendant claims that he was prejudiced by trial counsel's decision not to pursue these alternate strategies because the "other-crimes evidence would have substantiated [defendant's] otherwise unsubstantiated defense and undermined the witnesses' credibility." Defendant contends that if the jury had heard the evidence, there was a reasonable probability that the outcome of defendant's trial would have been different.

¶ 55    To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's performance was objectively unreasonable under prevailing social norms and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *People v. Domagala*, 2013 IL 113688, ¶ 36.

¶ 56    Under the first prong, defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. *People v. Mahaffey*, 165 Ill. 2d 445, 457-58 (1995). A court measures counsel's performance by an objective standard of competence under prevailing professional norms. *Id*. at 458. To establish deficiency, the defendant must overcome the strong presumption that the challenged action might be the product of sound strategy. *Id*. "Matters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Smith*, 195 Ill. 2d 179, 188 (2000).

¶ 57    Defendant argues that there was no sound strategic reason for counsel's performance, "and the State has not offered one." However, it is not the State's burden to offer reasons for trial counsel's strategy. Rather, it is defendant's burden to overcome the strong presumption of sound trial strategy. Here, defendant's only argument is that reasonable counsel would have ensured the admission of the evidence, and that counsel's failure to do so was "professionally unreasonable." We find that defendant has not overcome the strong presumption of sound trial strategy.

¶ 58    Decisions such as what evidence to present, whether to call certain witnesses, whether to file a motion, and what theory of defense to pursue are matters of trial strategy. *People v. Enis*, 194 Ill. 2d 361, 381 (2000); *People v. Hobley*, 182 Ill. 2d 404, 454 (1998) (the decision whether to file a motion is a matter of trial strategy which will be afforded great deference). Here, defense counsel filed motions *in limine* seeking to introduce evidence of prior crimes and prior bad acts. These motions were well-reasoned and argued before the court. The admissibility of that evidence was considered by the trial court, and ultimately rejected. Defendant's argument that defense counsel should have used different reasoning in his motions does not overcome the strong presumption that defense counsel's theory of defense and motion practice were matters of sound trial strategy.

¶ 59    Moreover, even if we were to find that defense counsel's performance was deficient, we would not find prejudice in this case. Defendant would have to show that there was a reasonable probability that "absent counsel's errors, the factfinder would have had a reasonable doubt respecting guilt." *People v. Johnson*, 2021 IL 126291, ¶ 54. However, there was simply no evidence presented at trial to support defendant's theory of defense. Even if evidence of Mason's domestic violence arrests and confrontation with Fields had been admitted, there would not be a reasonable probability that the jury would have had reasonable doubt as to defendant's guilt. The

evidence at trial showed that defendant approached the car from the passenger side, there was a shattered passenger side window, there was a shell casing found on the outside of the passenger side of the car, there was a bullet hole in the backseat of Webb's car, and only defendant's DNA was on the loaded bullets inside the magazine.

¶ 60    Accordingly, because defense counsel's performance was not deficient, and even if it was deficient, defendant's claim of ineffective assistance of counsel necessarily fails.

¶ 61                                    III. CONCLUSION

¶ 62    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 63    Affirmed.